IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JASON HUNTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 07-cv-0364-MJR-PMF |
| ) | |
| THOMAS KNAPP, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM and ORDER

REAGAN, District Judge:

A. Introduction and Procedural Summary

As originally filed in May 2007, this prisoner civil rights suit presented the claims of three detainees from the St. Clair County Jail in Belleville, Illinois (Jason Hunter, Billy Ford-Bey and James Little) against four Defendants (the jail superintendent, the county sheriff, the jail, and the City of Belleville). The case survived threshold review in April 2009. Through a series of prior Orders, certain claims and parties were dismissed from this lawsuit. What remains is the claim of Plaintiff Hunter (now an inmate at USP-Atwater in California) against Defendant Thomas Knapp (the former Superintendent of St. Clair County Jail).

Hunter was detained at St. Clair County Jail for roughly two years and assigned to the segregation unit for a portion of that period.[1] Hunter's claim

---

[1] The record indicates that, at the time in question, Hunter – who had a prior Missouri state conviction for robbery – was detained at St. Clair County Jail on federal charges of being a felon in possession of a firearm (USA v. Hunter, Case No. 06-30113-MJR).

against Knapp (contained within a pro se complaint and various "supplements") is grounded on an alleged deprivation of the First Amendment right to freely exercise his religious beliefs while detained in the St. Clair County Jail. More specifically, Hunter asserts that he was not able to practice his Muslim faith in the proper fashion or attend Bible study as frequently as he desired (see, eg., Doc. 1, p. 5; Doc. 13, pp. 1-2; Doc. 90, p. 1).

In his answer, Knapp denied these allegations and interposed the affirmative defense of qualified immunity (Doc. 61, p. 4). Now before the Court is Knapp's May 21, 2010 summary judgment motion, which is ripe for disposition. Although notified of the motion and warned of the consequences of failing to timely respond thereto (see Doc. 87), Plaintiff Hunter has not filed a memorandum opposing the motion and supporting memorandum.[2]

The failure to respond to a summary judgment motion, under the Local Rules of this District, may be considered by the Court as an admission of the merits of the motion. S.D. ILL. LOCAL RULE 7.1(c). The undersigned Judge considers Hunter's failure to respond in any way to Knapp's motion as an admission of the merits of that motion.

---

[2] The docket sheet suggests Hunter has continued to receive pleadings and Orders in this case. He has kept his address updated with the Clerk's Office, and he filed other pleadings between May 24, 2010 and June 23, 2010 – including a motion to reconsider, a proposed final pretrial order, an objection to a motion to compel, a consent form, and a request for additional time to respond to a different pending motion (see Docs. 88, 90, 91, 94).

Even if this Court overlooks Hunter's failure to oppose Knapp's motion and thoroughly assesses the merits of the motion, Hunter fares no better. For the reasons stated below, the Court grants Knapp's summary judgment motion.

B.   <u>Analysis</u>

Defendant Knapp presents dual arguments for summary judgment. First, Knapp contends that Hunter cannot produce sufficient evidence to establish that his First Amendment right to freely exercise his Islamic faith was unconstitutionally infringed by any act or omission of Defendant Knapp. Second, Knapp asserts that he has qualified immunity from Hunter's claims. The Court's analysis begins with reference to the applicable legal standards.

Summary judgment is appropriate where the pleadings, discovery materials, and any affidavits show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Turner v. The Saloon, Ltd., 595 F.3d 679, 683 (7th Cir. 2010); Durable Mfg. Co. v. U.S. Department of Labor, 578 F.3d 497, 501 (7th Cir. 2009), citing F<small>ED</small>. R. C<small>IV</small>. P. 56(c). Accord Breneisen v. Motorola, Inc., 512 F.3d 972 (7th Cir. 2008), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

In ruling on a summary judgment motion, the district court must construe all facts in the light most favorable to, draw all legitimate inferences in favor of, and resolve all doubts in favor of the non-moving party. National Athletic Sportswear, Inc. v. Westfield Ins. Co., 528 F.3d 508, 512 (7th Cir. 2008).

Accord Reget v. City of La Crosse, 595 F.3d 691, 695 (7th Cir. 2010); TAS Distributing Co., Inc. v. Cummins Engine Co., Inc., 491 F.3d 625, 630 (7th Cir. 2007).

When the non-moving party bears the burden of proof, he must demonstrate the existence of a genuine fact issue to defeat summary judgment. Reget, 595 F.3d at 695. Stated another way, to survive summary judgment, the non-movant must provide evidence on which the jury or court could find in his favor. See Maclin v. SBC Ameritech, 520 F.3d 781, 786 (7th Cir. 2008).

In the case at bar, Hunter alleges that – while he was detained at St. Clair County Jail on a federal weapons charge – Superintendent Knapp would not allow Muslims to have a religious worship service, that Knapp allowed only Christian services at the jail, and that Knapp did not allow inmates in segregation to worship with inmates from general population.

In its threshold review Order, the Court construed these allegations as a claim for violation of Hunter's rights under the First Amendment to the United States Constitution – which secures the right to freely exercise one's religion. Now with discovery undertaken and motions filed, the picture has become clearer. Hunter mistakenly equates the unavailability of certain worship services and aids (prayer rugs, etc.) with the contravention of his federally-secured right to freely practice his religion. As is explained more fully below, the materials before this Court contain no indication whatsoever that Defendant Knapp ever contravened

Hunter's First Amendment rights or in any manner interfered with Hunter's free exercise of his religious beliefs.

Hunter's summary of his allegations during his April 19, 2010 deposition is telling. Hunter pointedly declared that, as a "federal prisoner ... wherever I go throughout America, I got these rights. I can have my hat. I can have my prayer rug.... [I]f I don't have a Koran, they're going to hand me a Koran, because this is part of – you know what I'm saying – being locked up as a federal inmate, and part of the Constitution;" and it's "the jail's obligation and all these people to accommodate the religion" (Doc. 86-1, pp. 5, 11-12).

The First Amendment to the United States Constitution provides that "Congress shall make no law ... prohibiting the free exercise" of religion. U.S. CONST., AMDT. 1. This provision, known as the free exercise clause, was made applicable to the states through the Fourteenth Amendment. Callahan v. Fermon, 526 F.3d 1040, 1043 (7th Cir. 2008).

Without doubt, prisoners and detainees retain the right to exercise their religious beliefs, but that right is not unfettered. Ortiz v. Downey, 561 F.3d 664, 669 (7th Cir. 2009), citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 348-49 (1987), and Turner v. Safley, 482 U.S. 78, 89-91 (1987). As the United States Court of Appeals for the Seventh Circuit summarized this principle in Ortiz, 561 F.3d at 669, prison officials may restrict an inmate's ability to practice his faith so long as the restriction is reasonably related to a legitimate penological interest,

which "include security and economic concerns."

The affidavits, deposition excerpts, and other materials on file reveal the following as to the time relevant to Hunter's claim against Defendant Knapp (i.e., while Hunter was a pretrial detainee in the county jail and Knapp was the jail superintendent).

- <u>Reading Materials</u>:  All St. Clair County jail detainees were permitted to possess religious reading materials, regardless of religious denomination.  These permitted materials included the Koran.  Any religious reading materials provided to detainees at St. Clair County Jail came from civilian volunteers, furnished at their own expense.  The jail neither purchased nor distributed religious materials to any detainees.

- <u>Worship Services</u>:  The jail did not provide faith-specific religious services.  Detainees were not permitted to conduct religious services themselves, due to safety and security concerns. However, clergy, ministers, and prayer leaders of various legally-recognized religions were permitted to visit the jail and minister to detainees on scheduled visits.  Islamic congregational services were allowed if conducted by a willing and able civilian volunteer.

- <u>Religious Apparel</u>: Detainees were not allowed to wear clothing or other apparel on their heads, due to safety and security concerns (i.e., a detainee could hide a weapon or contraband in a head garment, conceal his identity, or signal a threat which could cause a disturbance).

-○ <u>In-Cell Worship</u>: Detainees were permitted to pray and worship in their cells and (unless on suicide watch) were allowed to use their shower towel or t-shirt as a prayer rug if they so chose.

- ○ <u>Diet and Fasting</u>: Detainees were permitted to fast in accord with their religious beliefs. Upon request, detainees were accommodated in terms of meal times and diet in accord with their religious beliefs.

- ○ <u>Plaintiff's Worship</u>: Jason Hunter prayed by himself in his cell. He also prayed with other Muslims housed in his cell-block/unit. He fasted during the month of Ramadan. Since that involves not eating between sunrise and sunset, Hunter requested and received from the jail accommodations for meals during appropriate times in accord with Ramadan requirements. He studied the Bible as well, because "Muslims ... follow all the books ... that God sent" (Deposition Testimony, Doc. 86-1, p. 2). He was aware that he could use his shower towel as a prayer rug if he wanted to do so.

Viewed in the light most favorable to the non-movant (Hunter), the record before this Court (including Hunter's deposition testimony and Knapp's affidavit) discloses that Hunter's religious beliefs were accommodated and were not infringed. The jail allowed him to fast. He was never prevented from praying in his cell. Although he did not bring a Koran with him to the jail, Hunter was not prevented from possessing a Koran. Knapp did not deny Hunter Islamic worship services or prevent Hunter from attending. When Islamic services were

unavailable, that was the direct result of a lack of civilian volunteers – not any act or omission by Defendant Knapp which violated Hunter's right to freely exercise his faith.

The record is simply devoid of any evidence creating a genuine issue of material fact on the only claim left in this case – the First Amendment free exercise claim Hunter brings against Knapp. Stated another way, no reasonable fact-finder could return a verdict for Hunter here. See Nelson v. Miller, 570 F.3d 868, 875 (7th Cir. 2009). Furthermore, Knapp is entitled to judgment as a matter of law.

Knapp enjoys qualified immunity herein, because his conduct did not violate any clearly established statutory or constitutional rights. For these reasons, summary judgment is warranted in Knapp's favor.

"Qualified immunity protects officers performing discretionary functions from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights that a reasonable person would know about." Mustafa v. City of Chicago, 442 F.3d 544, 548 (7th Cir. 2006), citing Saucier v. Katz, 533 U.S. 194, 201 (2001).

To determine whether an official is entitled to qualified immunity, the Court engages in a two-step inquiry. The first question is whether, taken in the light most favorable to the plaintiff, the facts must show that the officer's conduct violated a constitutional right.

Second, if a constitutional right was violated, the court then must decide whether the right was clearly established at the time of the alleged violation. Vose v. Kliment, 506 F.3d 565, 568 (7th Cir. 2007), citing Finsel v. Cruppenink, 326 F.3d 903, 906 (7th Cir. 2003).[3] See also Fox v. Hayes, 600 F.3d 819, 832 (7th Cir. 2010)("In sorting out the question of qualified immunity, we must ask whether the facts – again, taken in the light most favorable to the [plaintiff] – show that the officer's conduct violated [the plaintiff's] clearly established rights.").

Under Saucier, the district court was to strictly follow the sequential procedure of first determining whether the conduct in question violated a constitutional right and then, only if plaintiff met that burden, moving on to the second question – whether the particular constitutional right was clearly established at the time of the alleged violation.

In April 2010, the Seventh Circuit noted that recent Supreme Court caselaw has held that while the Saucier two-step sequence remains appropriate, "it should no longer be regarded as mandatory." Estate of Escobedo v. Bender, 600 F.3d 770, 778-79 (7th Cir. 2010), quoting Pearson v. Callahan, – U.S. –, 129

---

[3] To be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Koger v. Bryan, 523 F.3d 789, 802 (7th Cir. 2008), citing Anderson v. Creighton, 483 U.S. 635, 640 (1987).

S. Ct. 808 (2009).   Accord Akande v. Grounds, 555 F.3d 586, 589 n.3 ("The Supreme Court has recently clarified that the Saucier sequence is not an inflexible requirement.... However, courts are still free to follow the Saucier protocol where, as here, it facilitates the expeditious disposition of a case.").

In the case sub judice, the undersigned Judge finds the Saucier sequential approach beneficial.  And the Court need proceed no further than step one of the two-step analysis.  "If it is clear that there has been no constitutional injury, we need not proceed to the second step: the officials are entitled to immunity."  Akande, 555 F.3d at 590, citing Saucier, 533 U.S. 194, 201 (2001).

The record before this Court reveals no violation by Knapp of Hunter's rights under the First Amendment.  So the undersigned Judge need not and will not proceed to step two (assessing the contours of the constitutional right in question).  Hunter has not shown that his constitutional rights were violated, and Knapp is entitled to qualified immunity.

Plaintiff cannot succeed on his First Amendment claim.  Summary judgment is warranted in favor of Defendant Knapp.

C. Conclusion

Despite being clearly admonished about the consequences of failing to timely respond to Defendant's summary judgment motion, Plaintiff failed to do so.  The Court construes that failure as an admission of the merits of the motion, under Local Rule 7.1(c).

Even if the Court overlooks the lack of response and, instead, engages in a full merits-based analysis of the motion, the result is the same. Construing the facts and reasonable inferences in the light most favorable to Jason Hunter, the Court concludes that no genuine issue of material fact remains, and Thomas Knapp is entitled to judgment as a matter of law.

Accordingly, the Court GRANTS Knapp's motion for summary judgment (Doc. 86) and DIRECTS the Clerk of Court to enter judgment against Plaintiff Hunter and in favor of Defendant Knapp. As this is the last claim remaining for disposition herein, judgment may now be entered and the case closed. This Order RESULTS in the cancellation of all future hearings (including final pretrial conference and trial).[4]

IT IS SO ORDERED.

DATED July 13, 2010.

s/ Michael J. Reagan
Michael J. Reagan
United States District Judge

---

[4] Judge Frazier will handle any outstanding issue regarding the payment/collection of the fee and expense award ordered he ordered herein (see Docs. 82, 93).